UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| WILLIAM CHAN LIM, | ) | 1:09-cv-01753-AWI-JLT HC |
| | ) | |
| Petitioner, | ) | FINDINGS AND RECOMMENDATIONS TO GRANT  RESPONDENT'S MOTION TO DISMISS (Doc. 8) |
| v. | ) | |
| | ) | ORDER DIRECTING THAT OBJECTIONS BE FILED WITHIN TWENTY DAYS |
| NEIL H. ADLER, | ) | |
| Respondent. | ) | |

**PROCEDURAL HISTORY**

Petitioner is a federal prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241.

The instant petition for writ of habeas corpus was filed on October 5, 2009.  (Doc. 1).  The petition challenges the results of an April 30, 2009, prison disciplinary hearing finding Petitioner guilty of use of the telephone for abuses other than criminal activity. (Doc. 8, Exs. A; C).  As a result of the hearing, Petitioner was sanctioned with the loss of 27 days good conduct time and confined to the Secure Housing Unit ("SHU"), for a period of thirty days.  (<u>Id</u>., Ex. C).  On January 4, 2010, Respondent filed the instant motion to dismiss, contending that Petitioner had failed to exhaust his administrative remedies and that the claims failed on their merits.  (Doc. 8).  On February 1, 2010, Petitioner filed his opposition to the motion to dismiss.  (Doc. 9).

**DISCUSSION**

A.  Jurisdiction

Relief by way of a writ of habeas corpus extends to a person in custody under the authority of the United States. See 28 U.S.C. § 2241. While a federal prisoner who wishes to challenge the validity or constitutionality of his conviction must bring a petition for writ of habeas corpus under 28 U.S.C. § 2255, a petitioner challenging the manner, location, or conditions of that sentence's execution must bring a petition for writ of habeas corpus under 28 U.S.C. § 2241. See, e.g., United States v. Giddings, 740 F.2d 770, 772 (9th Cir.1984); Brown v. United States, 610 F.2d 672, 677 (9th Cir. 1990). To receive relief under 28 U.S.C. § 2241 a petitioner in federal custody must show that his sentence is being executed in an illegal, but not necessarily unconstitutional, manner. See, e.g., Clark v. Floyd, 80 F.3d 371, 372, 374 (9th Cir. 1995) (contending time spent in state custody should be credited toward federal custody); Jalili, 925 F.2d at 893-94 (asserting petitioner should be housed at a community treatment center); Barden, 921 F.2d at 479 (arguing Bureau of Prisons erred in determining whether petitioner could receive credit for time spent in state custody); Brown, 610 F.2d at 677 (challenging content of inaccurate pre-sentence report used to deny parol).

Petitioner asserts that he suffered violations of his rights as guaranteed by the United States Constitution.  Petitioner's claims arise out of a disciplinary hearing conducted on April 30, 2009, after which the DHO found that Petitioner committed the prohibited act of use of the telephone for abuses other than criminal activity.  (Doc. 1, p. 3).  Petitioner contends that (1) Respondent's conduct of the hearing violated Petitioner's due process rights, and (2) Respondent wrongfully failed to apply the "mailbox rule" to make Petitioner's administrative appeal timely.  (Id.).  As a result of the hearing, Respondent sanctioned Petitioner with a loss of 27 days of good conduct time and ordered Petitioner to serve 30 days of disciplinary segregation.  (Doc. 8, Ex. C).  If a constitutional violation has resulted in the loss of time credits, such violation affects the duration of a sentence and may be remedied by way of a petition for writ of habeas corpus.  Young v. Kenny, 907 F.2d 874, 876-878 (9th Cir. 1990).

Here, Petitioner is challenging the result of a prison disciplinary hearing that resulted in a loss of credits.  Thus, he is challenging the execution of his sentence, which is maintainable only in a

1  habeas corpus proceeding.  Tucker v. Carlson, 925 F.2d 330, 331 (9th Cir. 1990).  Furthermore, because Petitioner is challenging the execution of his sentence at Taft Correctional Institution ("TCI"), and TCI is within the Eastern District of California, Fresno Division, this Court has jurisdiction over the petition.  See Brown v. United States, 610 F.2d 672, 677 (9th Cir. 1990).

B.  Procedural Grounds for Motion to Dismiss

Respondent has filed a motion to dismiss the petition for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. Proc. 12(b)(6).  (Doc. 8).  Along with the motion, Respondent has submitted various documents, including the Disciplinary Hearing Officer's ("DHO") report, the original incident report.  (Doc. 8 and attached Exhibits).   Reading Respondent's arguments and submitted exhibits, it is clear that, in addition to its claim of lack of exhaustion, Respondent is also arguing the merits, or lack thereof, of Petitioner's claims, not merely a procedural deficiency such as lack federal jurisdiction or failure to state a claim.

Rule 4 of the Rules Governing Section 2254 Cases allows a district court to dismiss a petition if it "plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court . . . ." Rule 4 of the Rules Governing Section 2254 Cases.[1] The Ninth Circuit has allowed respondents to file a motion to dismiss in lieu of an answer if the motion attacks the pleadings for failing to exhaust state remedies or being in violation of the state's procedural rules. See, e.g., O'Bremski v. Maass, 915 F.2d 418, 420 (9th Cir. 1990) (using Rule 4 to evaluate motion to dismiss petition for failure to exhaust state remedies); White v. Lewis, 874 F.2d 599, 602-03 (9th Cir. 1989) (using Rule 4 as procedural grounds to review motion to dismiss for state procedural default); Hillery v. Pulley, 533 F.Supp. 1189, 1194 & n.12 (E.D. Cal. 1982) (same).  Thus, a respondent can file a motion to dismiss after the Court orders a response, and the Court should use Rule 4 standards to review the motion.  See Hillery, 533 F. Supp. at 1194 & n. 12.

As discussed above, the Rules Governing Section 2254 Cases do not expressly provide for motion practice; rather, such motion practice must be inferred from the structure of the rules

---

[1] The Rules Governing Section 2254 Cases may be applied to petitions for writ of habeas corpus other than those brought under § 2254 at the Court's discretion. See, Rule 1 of the Rules Governing Section 2254 Cases. Civil Rule 81(a)(2) provides that the rules are "applicable to proceedings for . . . habeas corpus . . . to the extent that the practice in such proceedings is not set forth in statutes of the United States and has heretofore conformed to the practice of civil actions." Fed. R. Civ. P 81(a)(2).

3

themselves. <u>Hillery</u>, 533 F.Supp. at 1195. For example, Rule 11 provides as follows:

> The Federal Rules of Civil Procedure, to the extent that they are not inconsistent with any statutory provisions or these rules, <u>may</u> be applied to a proceeding under these rules.

Rule 11 of the Rules Governing Section 2254 Cases. (Emphasis supplied). Because of the peculiar and unique nature of habeas proceedings, as a general rule, neither Rule 12(b)(6) nor summary judgment motions under Rule 56 are particularly appropriate. Given the nature of a habeas corpus petition, <u>Anderson v. Butler</u>, 886 F.2d 111, 113 (5th Cir. 1989) (modern habeas corpus procedure has the same function as an ordinary appeal); <u>O'Neal v. McAnnich</u>, 513 U.S. 440, 442, 115 S.Ct. 992 (1995) (federal court's function in habeas corpus proceedings is to "review errors in state criminal trials"(emphasis omitted), motions for summary judgment are unnecessary because petitions may be decided immediately by the Court following submission of the pleadings provided no material issues of fact exist. <u>See</u>, 1 J. Liebman, *Federal Habeas Corpus Practice and Procedure,* § 17.3 (1988) (The habeas corpus statute authorizes -- indeed, it seems to *require* -- the court treat the petition itself as the equivalent of a petitioner initiated summary judgment motion).

Similarly, a Rule 12(b)(6) motion attacking the sufficiency of the pleading in the petition does not comfortably fit within the habeas landscape either. In filing a response in the form of a Rule 12(b)(6) motion rather than an Answer, it appears to the Court that Respondent does not fully appreciate the unique requirements of habeas proceedings. Nevertheless, the Court is of the opinion that denying Respondent's motion to dismiss solely on narrow procedural grounds and then requiring Respondent to file an answer that would, in all likelihood, raise the same issues and rely on the same evidence, would be an inefficient use of the parties' time as well as the Court's resources. Instead, the Court has the inherent power under the Rules Governing Section 2254 Cases to construe Respondent's motion to dismiss as an answer on the merits and Petitioner's opposition to the motion to dismiss as a traverse. So construing the filings, the Court would then be in a position to rule on the merits of the petition without the need for further development of the record or additional briefing.

Such an approach is entirely consistent with the Rules Governing Section 2254 Cases. Historically, habeas practice provided only two dispositions for petitions: summary dismissal or a

1  full hearing.  Hillery, 533 F.Supp. at 1196.  However, the drafters of the present Rules Governing
2  Section 2254 cases believed that, in some instances, an intermediate process, through the device of
3  an expanded record under Rule 7 might be advantageous.  Id.  "The purpose [of Rule 7] is to enable
4  the judge to dispose of some habeas petitions not dismissed on the pleadings, without the time and
5  expense required for an evidentiary hearing...Authorizing expansion of the record will, hopefully,
6  eliminate some unnecessary hearings."  Advisory Committee Note to Rule 7.

7  In effect, Respondent has sought to expand the record beyond the petition by attaching
8  exhibits in the form of additional documents that bear upon the disciplinary hearing that lies at the
9  heart of this case.  Petitioner does not dispute the authenticity of these documents.  Indeed, in his
10 opposition to the motion as well as in his original petition, Petitioner has also submitted additional
11 documents purportedly supporting his position.  From all of these documents and arguments, no
12 disputed issues of fact have emerged; rather, both Respondent's and Petitioner's arguments are
13 entirely legal ones.   By filing this motion to dismiss, Respondent has clearly evidenced its belief that
14 the present record, as presently constituted, is sufficient for this Court to determine the merits of the
15 case.  Petitioner, by filing an opposition that addresses the merits as well as includes additional
16 documents, has also shown his implicit desire to have the Court resolve the claims within the
17 procedural framework of the documents presently on file with the Court.  Under those circumstances,
18 the Court agrees that there are no controverted issues of fact, that the present record is sufficient as
19 presently constituted, and that no additional evidence is required for the Court to reach a decision on
20 the merits of the petition.

21 Accordingly, the Court will construe Respondent's motion to dismiss as an answer on the
22 merits, and will likewise construe Petitioner's opposition to the motion to dismiss as a traverse.
23 Having resolved that procedural tangle, the Court now turns to the issues raised in the motion to
24 dismiss.

25 C.  Petitioner's Claims Are Not Exhausted.

26 Respondent first contends that the petition should be dismissed because the claims therein are
27 not fully exhausted.  Petitioner contends that a federal prisoner is not required to exhaust his claims
28 and that exhaustion would be futile.  The Court agrees with Respondent that because Petitioner has

5

failed to exhaust his claims, the petition should be dismissed.

Before filing a petition for writ of habeas corpus, a federal prisoner challenging any circumstance of imprisonment must first exhaust all administrative remedies. Martinez v. Roberts, 804 F.2d 570, 571 (9th Cir. 1986); Chua Han Mow v. United States, 730 F.2d 1308, 1313 (9th Cir. 1984); Ruviwat v. Smith, 701 F.2d 844, 845 (9th Cir. 1983). The requirement that federal prisoners exhaust administrative remedies before filing a habeas corpus petition was judicially created; it is not a statutory requirement. Brown v. Rison, 895 F.2d 533, 535 (9th Cir. 1990). Thus, "because exhaustion is not required by statute, it is not jurisdictional." Id. If Petitioner has not properly exhausted his claims, the district court, in its discretion, may either "excuse the faulty exhaustion and reach the merits or require the petitioner to exhaust his administrative remedies before proceeding in court."

If the petitioner did not properly exhaust his administrative remedies, and such remedies are no longer available, he may have procedurally defaulted on his claims. See Francis v. Rison, 894 F.2d 353, 354-55 (9th Cir.1990) (applying procedural default rules to administrative appeals); see generally Murray v. Carrier, 477 U.S. 478, 485 (1986); Wainwright v. Sykes, 433 U.S. 72, 86-87 (1977); Tacho v. Martinez, 862 F.2d 1376, 1378 (9th Cir.1988). If a claim is procedurally defaulted, the court may require the petitioner to demonstrate cause for the procedural default and actual prejudice from the alleged constitutional violation. See Francis, 894 F.2d at 355 (suggesting that the cause and prejudice test is the appropriate test); Murray, 477 U.S. at 492 (cause and prejudice test applied to procedural defaults on appeal); Hughes v. Idaho State Bd. of Corr., 800 F.2d 905, 906-08 (9th Cir.1986) (cause and prejudice test applied to pro se litigants).

Here, as outlined in the Federal Bureau of Prison Program Statement P1330.16, to exhaust his claims, a federal inmate must first pursue an informal resolution, then submit a formal Administrative Remedy Request, followed by an appeal to the Privatization Management Branch. (Doc. 8, Ex. B).  In his petition, Petitioner alleges, alternatively, that exhaustion would be futile but also that the appeals he submitted were wrongly rejected as untimely. (Doc. 1, pp. 7; 8; 10; 26). In his opposition to the motion to dismiss, Petitioner further explains his futility argument by contending that when he was finally released from administrative segregation, he had too little time

6

to file his appeal in a timely manner. (Doc. 9, p. 4). Petitioner reasons that because his appeal has already been "improperly" rejected by the BOP as untimely, any future attempt by Petitioner to exhaust his claims would be futile.

Because it appears that Petitioner may be procedurally defaulted from exhausting his claims at this juncture, the Court requires that Petitioner establish cause for the procedural default and actual prejudice from the alleged constitutional violation. E.g., Francis, 894 F.2d at 355; Murray, 477 U.S. at 492. Petitioner has attempted to establish "good cause" through his claim that he did not have sufficient time to file his appeal. This contention is without merit.

Petitioner himself acknowledges that when he was released from administrative segregation on June 9, 2009, he still had ten days within which to timely file his appeal before the June 19, 2009 deadline. Although this was, admittedly, a much shorter time than the original time period for filing an administrative appeal, it was, nevertheless, sufficient. Petitioner, however, indicates that after he was released from administrative segregation, it took him seven days to locate a "counselor" and only when he had found a "jailhouse lawyer" in the prison law library was he able to prepare his appeal. This left him only three days to file his appeal.

However, Petitioner attaches to his opposition, the letter sent by the prison's grievance Coordinator, Dale Patrick, dated July 24, 2009 in response to Petitioner's July 8, 2009 letter inwhich he complained about the lack of time to appeal once he was released from administrative segregation. In that letter, Mr. Patrick notes that Petitioner could have prepared his appeal while in administrative segregation on forms available to inmates housed in that unit:

> "Records indicate that you received your copy of the DHO report for incident report number 1854622 on May 19, 2009. Your deadline, including mail time, for submitting your appeal to the Privatization Management Branch was June 19, 2009. You were released from the Special Housing Unit (SHU) on June 9, 2009. *However while you were housed in the SHU you had ample opportunity to access Administrative Remedy forms* and the Law Library to process your appeal. As your reasons for delay do not fit the criteria for a valid reason in accordance with policy, my office will not furnish you a letter stating the untimeliness of you [sic] submission was not your fault."

(Doc. 9, p. 14)(Emphasis added).

The time limits imposed for filing an administrative appeal do not await the locating of a counselor or a "jailhouse lawyer" nor do they await the convenience of the inmate. From the record

now before the Court, it appears that Petitioner had ample opportunity to prepare his appeal while in administrative segregation and then to file his administrative appeal, thereby exhausting his remedies. Under those circumstances, Petitioner has failed the "good cause" test. Therefore, the petition should be dismissed for lack of exhaustion.

### D. Petitioner's Claims Are Without Merit.

Petitioner contends that he was denied his due process rights at the 2009 disciplinary hearing and that his appeal was wrongfully rejected as untimely. Respondent contends that, even if the claims are exhausted, they fail on the merits. The Court agrees.

#### 1. No Due Process Violation.

Prisoners cannot be deprived of their constitutional rights entirely, but their rights may be diminished by the needs and objectives of the institutional environment. Wolff v. McDonnell, 418 U.S. 539, 555, 94 S. Ct. 2963 (1974). Prison disciplinary proceedings are not part of a criminal prosecution, so a prisoner is not afforded the full panoply of rights in such proceedings. Id. at 556. Thus, a prisoner's due process rights are moderated by the "legitimate institutional needs" of a prison. Bostic v. Carlson, 884 F.2d 1267, 1269 (9th Cir. 1989), citing Superintendent, etc. v. Hill, 472 U.S. 445, 454-455, 105 S. Ct. 2768 (1984).

However, when a prison disciplinary proceeding may result in the loss of good time credits, due process requires that the prisoner receive: (1) advance written notice of at least 24 hours of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the fact-finder of the evidence relied on and the reasons for the disciplinary action. Hill, 472 U.S. at 454; Wolff, 418 U.S. at 563-567. In addition, due process requires that the decision be supported by "some evidence." Hill, 472 U.S. at 455, citing United States ex rel. Vatauer v. Commissioner of Immigration, 273 U.S. 103, 106 (1927).

Petitioner does not appear to maintain that he was not given proper notice, or that he was denied the right to call witnesses and present evidence, or that the hearing officer failed to provide a written decision. Rather, Petitioner's main argument is that the hearing officer did not take into account Petitioner's alleged mental disabilities arising from a prior surgery, the stress of being

denied communication with his family, and his low IQ. (Doc. 1, p. 4). In light of these mental disabilities, Petitioner maintains, he "was unable to appreciate the nature and quality or the wrongfulness of his acts." (Id., p. 14). As such, Petitioner argues that the hearing officer's application of disciplinary rules to Petitioner was "unreasonable." (Id., p. 13).

The hearing officer's reports indicates that the guilty finding was based on the following:

First, the incident report written by K. Sy, SIS, which states that on 04-07-2009 at approximately 1500 hours, while monitoring inmate's recorded telephone calls, he found you utilizing inmate Vasquez's....telephone PIN. According to Sentry records, you received several incident reports for 297 [2] and are currently on telephone restriction until 2013. During the interviews on 04-07-2009, you admitted to using his telephone PIN. You admitted he dialed the telephone for you most of the time and you also admitted you dialed the telephone yourself, and paid Vasquez with commissary items for allowing you to use the PIN. The call occurred on 04-07-2009 at 0850 hours while in direct contact with telephone number (818) 718-0738, which is approved on your telephone list as your son-in-law. On 04-08-2009 at 1630 hours, Sy concluded the investigation and determined you utilized Vasquez's PIN and you paid him with commissary items. Inmates are assigned telephone PINs and they are not to be shared with other inmates.

Second, the Call Detail Report which provides the details to the above referenced telephone call.

Third, you appeared at the DHO hearing and chose to exercise your right to remain silent. In conjunction with the above evidence, the DHO has drawn an adverse inference from your silence. You failed to provide any evidence to dispute the charges against you.

Therefore, having considered all relevant evidence, the DHO finds some facts support this finding that you committed the prohibited act of Use of the Telephone for Abuses Other Than Criminal Activity, code 297.

(Doc. 1, p. 19).

For all of the reasons contained in the DHO's report, it is obvious that "some evidence" exists to support a finding that, in exchange for commissary items, Petitioner utilized inmate Vasquez's telephone in order to communicate with his son-in-law. Petitioner does not appear to deny the charges themselves. Rather, he contends that the hearing officer should have taken into consideration his various mental disabilities. However, as the hearing officer himself indicated, at the disciplinary hearing Petitioner chose to remain silent and presented no evidence whatsoever. Therefore, Petitioner cannot now complain that the hearing officer violated his constitutional right to

---

[2] According to the BOP's regulations, Prohibited Act Code section 297 is for "use of the telephone for abuses other than criminal activity (e.g., circumventing telephone monitoring procedures, possession and/or use of another inmate's PIN number; third-party calling; third-party billing; using credit card numbers to place telephone calls; conference calling; talking in code)." 28 C.F.R. § 541.13.

due process by failing to take into consideration evidence that Petitioner never even attempted to present.

Moreover, as Respondent correctly argues, even if Petitioner had proffered such evidence at the disciplinary hearing, nothing in the evidence attached to the instant petition or Petitioner's opposition to the motion to dismiss establishes that, as Petitioner maintains, he was "unable to appreciate the nature and quality of the wrongfulness of his acts."[3] Finally, Petitioner himself does not challenge the fact that he received notice of the hearing and the charge, that he was afforded an opportunity to be appear and to present witnesses, and that the hearing officer provided a written explanation of both his reasons for finding Petitioner guilty and his reasons for assessing the sanctions imposed in this case. Therefore, the Court has little difficulty concluding that Petitioner was afforded a full hearing with all procedural protections and a written explanation for the reasons underlying the sanctions. See Hill, 472 U.S. at 454; Wolff, 418 U.S. at 563-567; 28 C.F.R. § 541.13, Code 297. Accordingly, the Court finds no constitutional or statutory infirmity in the disciplinary proceeding at issue in this case.

### 2.  Rejection Of Petitioner's Appeal As Untimely.

Petitioner also maintains that Respondent erroneously failed to follow the "mailbox rule" when Petitioner attempted to file his administrative appeal, and, as a result, Petitioner's appeal was wrongfully rejected as untimely. Petitioner's argument is without merit.

In Houston v. Lack, the United States Supreme Court held that a pro se habeas petitioner's notice of appeal is deemed filed on the date of its submission to prison authorities for mailing, as opposed to the date of its receipt by the court clerk. Houston v. Lack, 487 U.S. 166, 276, 108 S.Ct. 2379, 2385 (1988). The rule is premised on the pro se prisoner's mailing of legal documents through

---

[3] In his opposition to the motion to dismiss, Petitioner has appended the results of an MRI performed on May 26, 2002, apparently after some cranial surgical procedure had been performed on Petitioner three months earlier. (Doc. 9, p. 17). Petitioner also submits a Surgical Pathology Report dated May 30, 2002, that diagnoses a "granulation tissue with acute & chronic inflammation." (Id., p. 18). Petitioner also submits a medical record indicating he underwent a minor surgical procedure on May 28, 2002 to clean and drain material resulting from the prior surgery. (Id., pp. 19-20). As discussed, the hearing officer's report does not indicate that Petitioner offered these documents at the disciplinary hearing. (Doc. 1, pp. 18-19). Even had he done so, without expert testimony to interpret these medical records, the Court is unable to determine if, or to what extent, Petitioner's medical condition in 2002 affected his ability in 2008 to appreciate the wrongfulness of his conduct in using Vasquez's telephone to contact his son-in-law in violation of prison rules. Accordingly, such evidence, even if properly presented at the disciplinary hearing, does not alter the conclusion that the disciplinary hearing process did not violate Petitioner's due process rights.

the conduit of "prison authorities whom he cannot control and whose interests might be adverse to his." Miller v. Sumner, 921 F.2d 202, 203 (9th Cir. 1990); see, Houston, 487 U.S. at 271, 108 S.Ct. at 2382. The Ninth Circuit has applied the "mailbox rule" to state and federal petitions in order to calculate the tolling provisions of the AEDPA. Saffold v. Neland, 250 F.3d 1262, 1268-1269 (9th Cir. 2000), *amended* May 23, 2001, *vacated and remanded on other grounds sub nom*. Carey v. Saffold, 536 U.S. 214, 226 (2002).

However, Petitioner does not cite, and the Court is unaware, of any case law extending the "mailbox rule" to administrative appeals by federal prisoners. Moreover, the BOP's administrative appeal regulation clearly state that the appeal must be received by the Privatization Administrator within 30 calendar days of the date of the Warden's response. 28 C.F.R. § 542.15. Additionally, that regulation provides that "...[w]hen the inmate demonstrates a valid reason for delay, these time limits may be extended." Id. Subsection (b) of 28 C.F.R. § 542.14 sets forth valid reasons for delay as including "an extended period in-transit during which the inmate was separated from documents needed to prepare the Request or Appeal; an extended period of time during which the inmate was physically incapable of preparing a Request or Appeal; an unusually long period taken for informal resolution attempts; indication by an inmate, verified by staff, that a response to the inmate's request for copies of dispositions requested under § 542.19 of this part was delayed." 28 C.F.R. § 542.14(b).

As discussed previously, Petitioner was deemed not to have satisfied any of the above exceptions. To the contrary, Petitioner's only excuse was that he had been in administrative segregation until ten days before the deadline for filing the administrative appeal. However, as explained in the letter to Petitioner from Dale Patrick, Petitioner could have secured the proper forms and prepared his appeal while in administrative segregation. The record does not establish whether Petitioner was able to mail the appeal while in administrative segregation; however, even assuming, arguendo, that he could not, once he was released, he would still have had ten days in which to submit the appeal via mail, a period of time the Court deems more than sufficient to file a timely administrative appeal.

From the foregoing, the Court agrees with Respondent that Petitioner has failed to meet any of the established exceptions in the regulation for late-filed appeals. Therefore, the decision by

Respondent to reject Petitioner's appeal as untimely was not unlawful.

**RECOMMENDATIONS**

For the foregoing reasons, the Court HEREBY RECOMMENDS as follows:

1. Respondent's motion to dismiss the petition (Doc. 8) should be GRANTED;
2. The petition for writ of habeas corpus should be DISMISSED as unexhausted and DENIED on the merits.

This Findings and Recommendation is submitted to the United States District Court Judge assigned to the case pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California.  Within twenty (20) days after being served with a copy of this Report and Recommendation, any party may file written objections with the Court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation."  Replies to the Objections shall be served and filed within fourteen days (plus three days if served by mail) after service of the Objections.  The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C).  The parties are advised that failure to file objections within the specified time may waive the right to appeal the Order of the District Court.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   **June 8, 2010**                                             /s/ Jennifer L. Thurston
                                                                                    UNITED STATES MAGISTRATE JUDGE